UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------------x

In re:                                                    Chapter 11

CHRISTINA FAMA-CHIARIZIA                                   Case No. 21-42341-ess

                          Debtor.
-------------------------------------------------------------------------x


MEMORANDUM DECISION ON THE OBJECTION TO THE DEBTOR
CHRISTINA FAMA-CHIARIZIA'S SUBCHAPTER V DESIGNATION

*Appearances:*

Sari Placona, Esq.                      Paul Fishman, Esq.
Anthony Sodono III, Esq.                Benjamin Mintz, Esq.
McManimon, Scotland & Baumann, LLC      Peta Gordon, Esq.
75 Livingston Avenue (Suite 201)        Justin Imperato, Esq.
Roseland, NJ  07068                     Arnold & Porter Kaye Scholer LLP
  *Attorneys for Christina Fama-Chiarizia*   250 West 55th Street
                                        New York, NY  10019
                                          *Attorneys for George and Linda Filosa*

## Introduction

This bankruptcy case began on September 15, 2021 (the "Petition Date"), when the debtor, Christina Fama-Chiarizia and her brother, Joseph Fama, Jr., each filed for protection under Subchapter V of Chapter 11 of the Bankruptcy Code. Ms. Fama-Chiarizia and Mr. Fama, Jr. each own a twenty-five percent interest in Industrial Urban Corp. ("IUC"), a construction and contracting business in New Jersey.

The filing of this bankruptcy case was precipitated by a judgment by the New Jersey Superior Court, finding IUC, Ms. Fama-Chiarizia, Mr. Fama, Jr., and other defendants jointly and severally liable to Triboro Hardware & Industrial Supply Corporation ("Triboro Hardware") in the amount of $3,353,219.18 (the "Triboro Judgment").[1] The Triboro Judgment is the result of an unpaid promissory note dated August 14, 2014, entered into between IUC, as the borrower, Ms. Fama-Chiarizia and Mr. Fama, Jr., as co-makers on the note, and George and Linda Filosa (the "Filosas") and Triboro Hardware ("Triboro"), a construction supply company, as lenders (the "August 2014 Note").

Subchapter V, which became effective on February 19, 2020, is part of the Small Business Reorganization Act (the "SBRA") and provides a special pathway for small business debtors to reorganize their debts. The purpose of the SBRA and of Subchapter V is "to streamline the bankruptcy process by which small business debtors reorganize and rehabilitate their financial affairs." H.R. Rep. No. 116-171, at 1, 116th Cong. 1st Sess. (2019), reprinted in

---

[1] As the parties have stipulated, on August 9, 2021, the Debtors filed a notice of appeal of the Triboro Judgment in New Jersey Superior Court, Appellate Division, and have agreed that "if the Debtors elect to reinstate the Appeal upon the conclusion of these Chapter 11 Cases, the Filosas shall not challenge such reinstatement." Stipulation and Order Concerning Debtors' Motion for Relief from the Automatic Stay to Pursue a New Jersey State Court Appeal, ECF No. 188, at 3.

2019 U.S.C.C.A.N. 366, 366, 2019 WL 3401849 (July 23, 2019) (comments of Rep. Ben Cline)).

Not every Chapter 11 debtor is eligible to proceed under Subchapter V. Instead, the SBRA establishes eligibility requirements to assure that the benefits offered to debtors by the Subchapter V pathway are available only to those debtors for whom they are intended – that is, individuals or entities with a limited amount of debt, at least half of which arose from their commercial or business activities. Put another way, Subchapter V is not for – or available to – everyone. It is tailored to the needs of small businesses and small business operators, who seek to address debt that arose from their business activity in a Chapter 11 bankruptcy case.

As set forth in Bankruptcy Code Section 1182(1)(A), in order to be eligible to elect Subchapter V, a debtor must be:

> A person engaged in commercial or business activities . . . that has aggregate noncontingent liquidated secured and unsecured debts as of the date of the filing of the petition . . . in an amount not more than $7,500,000 . . . not less than 50 percent of which arose from the commercial or business activities of the debtor.

11 U.S.C. § 1182(1)(A). That is, the Subchapter V eligibility requirements are that the debtor is a "person," that the debtor is "engaged in commercial or business activities," that the debtor's undisputed debts, both secured and unsecured, do not exceed $7.5 million, and that at least half of that debt arose from the debtor's "commercial or business activities." *Id*.

Before the Court is the Objection of the Filosas to Ms. Fama-Chiarizia's designation of this Chapter 11 case as one under Subchapter V, on grounds that she is not eligible to be a debtor under Subchapter V. The Filosas argue, in substance, that Ms. Fama-Chiarizia is not engaged in

commercial or business activities as required by Bankruptcy Code Section 1182(1)(A), and therefore cannot be a debtor in a Subchapter V case.[2]

Ms. Fama-Chiarizia makes several arguments in opposition to the Objection. As an initial matter, she argues that Subchapter V does not require a debtor to be currently engaged in business activity to be eligible to reorganize under this Subchapter. Ms. Fama-Chiarizia also points to the fact that the Triboro Judgment arises from a debt owed by IUC to the Filosas, and that she is a co-maker of the August 2014 Note and borrower on this debt. As a consequence, she argues, her liability to the Filosas arises from a business debt of IUC. Further, she notes that Congress did not define "commercial or business activities" in Subchapter V, and it is for the courts to decide what constitutes "commercial or business activities" on a case-by-case basis.

## Jurisdiction

This Court has jurisdiction and the authority to enter a final judgment pursuant to Judiciary Code Sections 1334(a) and 157(a), and the Standing Order of Reference dated August 28, 1986, as amended by the Order dated December 5, 2012, of the United States District Court for the Eastern District of New York, as this is a core matter. This is a core matter pursuant to Judiciary Code Section 157(b)(2)(A), and venue is proper before this Court pursuant to Judiciary Code Section 1409.

## Background

---

[2] As noted above, both Ms. Fama-Chiarizia and Mr. Fama, Jr. have filed voluntary Chapter 11 petitions for relief, and both have elected to proceed under Subchapter V. And the Filosas have objected to Mr. Fama, Jr.'s eligibility to be a Subchapter V debtor as well. *See In re Joseph Fama, Jr.*, Case No. 21-42342. Objection To Each Debtor's Designation as a Subchapter V Debtor Under Bankruptcy Code Sections 103 and 1182, ECF No. 44. By Memorandum Decision and Order entered on September 15, 2023, this Court overruled that Objection, on grounds that Mr. Fama, Jr., has shown that he is eligible to be a Subchapter V debtor. *See In re Joseph Fama, Jr.*, Case No. 21-42342, Memorandum Decision on the Objection to the Debtor Joseph Fama, Jr.'s Subchapter V Designation and Order.

3

*The New Jersey Superior Court Action*

The history of this bankruptcy case begins with a promissory note dated August 14, 2014, entered into between IUC, as the borrower and Triboro, as the lender.  As the New Jersey Superior Court found, Ms. Fama-Chiarizia and Mr. Fama, Jr. agreed to be co-makers on the August 2014 Note and to be jointly and severally liable for IUC's debt in the event that IUC did not fulfill its obligations to repay the loan and interest.  Memorandum of Decision (the "NJ Sup. Court Mem."), ECF No. 56, Exh. A at 2.  On May 31, 2019, Triboro and the Filosas commenced an action to recover on the August 2014 Note as well as on certain other trade debts owed by IUC (the "New Jersey Superior Court Action").  NJ Sup. Court Mem. at 15; Complaint, *Triboro Hardware & Industrial Supply Corp. v. Industrial Urban Corp.*, Case No. HUD-L-2176-19 (N.J. Super. Ct. May 31, 2019).

On December 22, 2020, the New Jersey Superior Court granted the Filosas' motion for summary judgment, and found Ms. Fama-Chiarizia and Mr. Fama, Jr. to be jointly and severally liable in the amount of $3,353,219.18, to the Filosas for the debt arising from the August 2014 Note.  Affidavit of Christina Fama-Chiarizia Pursuant to Local Bankruptcy Rule 1007-4, ECF No. 5 (the "Fama-Chiarizia Aff."), at ¶¶ 7-9.

*This Bankruptcy Case*

On September 15, 2021, Ms. Fama-Chiarizia filed a voluntary petition for relief under Subchapter V of Chapter 11, together with her schedules and statements.  ECF No. 1.  In her Schedule E/F, "Creditors Who Have Unsecured Claims," she lists a debt to the Filosas and Triboro Hardware in the amount of $1,453,000, and in her amended Schedule E/F, she lists an amended amount of $3,353,219.18.  Schedule E/F, ECF No. 1; Amended Schedule E/F, ECF No. 48.

On November 19, 2021, the Filosas filed a proof of claim arising from the Triboro Judgment in the amount of $3,430,969.41, and on May 10, 2023, they filed an amended proof of claim listing the Triboro Judgment in the amount of $3,859,094.60.  Proof of Claim 10-1; Proof of Claim 10-2.

*The Filosas' Objection to Ms. Fama-Chiarizia's Subchapter V Designation*

On October 29, 2021, and November 2, 2021, the Filosas filed an objection and amended objection to Ms. Fama-Chiarizia's election to proceed as a Subchapter V debtor, on grounds that she is not engaged in commercial or business activities as defined by Bankruptcy Code Section 1182(1)(A), and as required to be a Subchapter V debtor.  ECF Nos. 44, 47 (the "Objection" or "Obj.").

By way of background, the Filosas state that Ms. Fama-Chiarizia and Mr. Fama, Jr. are each personally liable to them on the August 2014 Note that they executed on behalf of IUC. Obj. at 3.  They also state that the New Jersey Superior Court granted their motion for summary judgment on that Note, and found that Ms. Fama-Chiarizia and Mr. Fama, Jr. are jointly and severally liable to them in the amount of $3,353,219.18.  *Id*.  And the Filosas note that prior to the Petition Date, Ms. Fama-Chiarizia was engaged in a separate litigation with former business associates Nicole and Anthony Frisina, and that this action is still pending in the New Jersey Superior Court, Essex County, Law Division.  Obj. at 4.

The Filosas argue that while Ms. Fama-Chiarizia owns twenty-five percent of IUC, she is not engaged in commercial or business activities because she has had "no involvement with IUC since approximately 2016."  Obj. at 6.  They observe that consistent with this, other than the Triboro Judgment, Ms. Fama-Chiarizia's bankruptcy schedules list only consumer debts.  Obj. at 5.

They state that "[w]hen a debtor's eligibility to elect to proceed under Subchapter V is challenged, the burden is on the debtor to establish such eligibility."  Obj. at 7-8 (citing cases). As a consequence, they argue, "if [Ms. Fama-Chiarizia and Mr. Fama, Jr.] are not 'engaged in commercial or business activities' or if less than or equal to 50% of each [of their] noncontingent liquidated debts as of the Petition Date arose from 'commercial or business activities,' [they] are not eligible to proceed under Subchapter V."  Obj. at 8-9.  And they note that the Bankruptcy Code does not define "commercial or business activities," but does define "consumer debt" in Bankruptcy Code Section 101(8) as "debt incurred by an individual primarily for a personal, family, or household purpose."  Obj. at 9.

The Filosas also argue that "an individual debtor must have been 'engaged in commercial or business activities' as of the petition date to be eligible to proceed under Subchapter V."  Obj. at 10 n.9 (citing *In re McCune*, 2021 WL 4782957 (Bankr. D.N.M. Oct. 13, 2021)); *In re Vertical Mac Constr., LLC*, 2021 WL 3668037 (Bankr. M.D. Fla. July 23, 2021); *In re Port Arthur Steam Energy, L.P.*, 629 B.R. 233, 238 (Bankr. S.D. Tex. 2021); *In re Blue*, 630 B.R. 179, 189 (Bankr. M.D.N.C. 2021)).  That is, they assert, because IUC is no longer operating, Ms. Fama-Chiarizia simply was not engaged in "commercial or business activities" when she filed this bankruptcy case.  Obj. at 11.

For all these reasons, the Filosas conclude, Ms. Fama-Chiarizia is not eligible to proceed under Subchapter V.  Obj. at 14.[3]

---

[3]  Two additional arguments initially advanced by the Filosas have been addressed fully by Ms. Fama-Chiarizia and will not be considered further.

First, the Filosas point to the fact that in her affidavit, Ms. Fama-Chiarizia states that she is "'not a "small business debtor" within the meaning of Bankruptcy Code Section 101(51)(D).'" Obj. at 4 (quoting Fama-Chiarizia Aff. ¶ 3).  *See* Obj. at 13.  Ms. Fama-Chiarizia responds that Section 1182(1) was amended to remove a "small business debtor" from the definition of a Subchapter V debtor, so that a "person" that is an individual may be a Subchapter V debtor.

*Ms. Fama-Chiarizia's Arguments in Opposition to the Filosas' Objection to Her Subchapter V Designation*

On November 24, 2021, Ms. Fama-Chiarizia filed opposition to the Filosas' Objection. Reply to the Amended Objection to Each Debtor's Designation as a Subchapter V Debtor (the "Opp."), ECF No. 56.  She responds that she satisfies each of the requirements to proceed as a Subchapter V debtor, because she is a "person," she does not have total debts exceeding $7.5 million, more than fifty percent of her debt arises from a business debt, and as courts have found, Subchapter V does not require a "[d]ebtor to be 'currently' engaged in business activity [] if the debt is tethered to business 'legacy' debt."  Opp. at 2-3.  And she argues that "[i]ronically, it is the Filosas that pushed the Debtors into bankruptcy as a result of a business debt owed to the Filosas but seek to deny them Subchapter V status based on that same business debt."  Opp. at 3.

She states that the "only reason the [bankruptcy] cases were filed were as a result of the judgment entered in favor of the Filosas which arose from a business transaction."  *Id.*  Ms. Fama-Chiarizia points to the findings in the New Jersey Superior Court's decision:

> "The record indicates that the Filosas made the loan to IUC; their bank wired the funds directly to IUC's corporate bank account; IUC used the money for business purposes . . . The record is equally clear that the money was never intended for personal use, but that IUC entered into this loan agreement because it 'needed funds' as its revenue stream was lagging behind its accounts payable."

Opp. at 4 (quoting NJ Sup. Court Mem. at 29).

---

Opp. at 2 n.4.  As a result, she asserts, this does not prevent her from seeking relief under Subchapter V.  Opp. at 4.

Second, the Filosas point to the fact that Ms. Fama-Chiarizia lists the Triboro Judgment as contingent, unliquidated, and disputed in her schedules.  Obj. at 11-12.  As a consequence, they argue, her scheduled debts do not include any noncontingent and liquidated debts arising from IUC or her ownership interest, and she does not owe any "business debts" as described in Section 1182(1)(A).  Obj. at 11.  Ms. Fama-Chiarizia responds that she "[i]nadvertently, [] listed the Filosas' debt as unliquidated, contingent and disputed" and "insofar as the debt was reduced to judgment, [she has] amended [her] schedules to reflect the Filosas' debt as non-contingent and liquidated."  Opp. at 2 n.2.

For these reasons, Ms. Fama-Chiarizia argues the Triboro Judgment is a business debt, and, therefore, at least fifty percent of her debts arose from business debts.  Opp. at 4.  And Ms. Fama-Chiarizia notes that she comes within the applicable debt limit because Congress increased the Subchapter V debt cap to $7.5 million in the CARES Act.  Opp. at 3.

She further points out that the New Jersey Superior Court found that "'[t]here is no indication that the loan was made for any purpose except for a business purpose.'"  Opp. at 4 (quoting NJ Sup. Court Mem. at 30).  And she states that the fact that some of her debts are consumer debts does not disqualify her as a Subchapter V debtor.  Opp. at 5.

Ms. Fama-Chiarizia also responds that Bankruptcy Code Section 1182(1)(A) sets the criteria for who qualifies for Subchapter V status, and does not require that a debtor be "actively" or "currently" engaged in commercial or business activities.  Opp. at 6-7.  She argues there is "no statutory definition of what constitutes 'commercial or business activities.'  Accordingly, it is for the courts to decide what constitutes 'commercial or business activities.'"  Opp. at 8.  And she asserts that the majority of her debt "arose from business activity."  *Id*.

And she argues that "'the test for determining whether a debt should be classified as a business debt, rather than as a consumer debt, is whether it was incurred with an eye toward profit.'"  Opp. at 8 (quoting *In re Martin*, 2013 WL 5423954 at *6 (S.D. Tex. Sept. 26, 2013)).  And the "[c]ourt must look at the substance of the transaction and the borrower's purpose in obtaining the loan, rather than merely looking at the form of the transaction."  *Id*.

In addition, Ms. Fama-Chiarizia argues that several courts have found that a debtor need not be "currently" engaged in commercial or business activity to be eligible to reorganize under Subchapter V.  Opp. at 11-12 (citing *In re Blanchard*, 2020 WL 4032411, at *2 (Bankr. E.D. La. July 16, 2020); *In re Wright*, 2020 WL 2193240, at *3 (Bankr. D.S.C. Apr. 27, 2020); *In re*

*Bonert*, 619 B.R. 248, 255 (Bankr. C.D. Cal. 2020)).  She argues "that whether the Debtor was 'making a profit, actively operating, or intending to operate in the future' is not determinative of whether the Debtor was 'engaged in commercial or business activity.'"  Opp. at 14-15 (quoting *In re Ikalowych*, 629 B.R. 261, 285 (Bankr. D. Colo. 2021)).  And she states that in the New Jersey Superior Court Action, the court found "that the debt arose from a business transaction and in no way was related to a personal debt."  Opp. at 15.

In sum, she responds that she meets each of the eligibility requirements of Bankruptcy Code Section 1182 to be a Subchapter V debtor, because the Triboro Judgment is "legacy business debt."  Opp. at 17.

*The Filosas' Reply*

On December 10, 2021, the Filosas filed a reply in further support of the Objection. Further Response to the Amended Objection to Each Debtor's Designation as a Subchapter V Debtor (the "Reply"), ECF No. 59.  The Filosas reply that Ms. Fama-Chiarizia cannot meet the requirements to proceed as a Subchapter V debtor because she is not "engaged in commercial or business activities."  Reply at 2.

The Filosas reply that many courts have disagreed with *In re Wright*, *In re Blanchard*, and *In re Bonert*.  Reply at 2 (citing cases).  They argue that "engaged in commercial or business activities" means current active participation in the exchange of buying or selling of economic goods or services for profit as of the Petition Date.  Reply at 3.  They urge that to adopt Ms. Fama-Chiarizia's interpretation "would expand Subchapter V's reach beyond all reasonable boundaries and the actual purpose of the statute."  *Id*.  The Filosas also reply that "'[e]ngaged is an active term, referring to the present and not the past.  Had the drafters intended to refer to past

activities, they would have written "was engaged" or "had engaged.""" Reply at 4 (quoting *In re Vertical Mac Constr.,* 2021 WL 3668037, at *2).

And the Filosas reply that "engaged in" means "'a person or entity is presently doing something.'" Reply at 4 (quoting *In re Ikalowych*, 629 B.R at 281). They argue that "'engaged in' is written not in the past or future but in the present tense." Reply at 5 (quoting *In re Thurmon*, 625 B.R. 417, 422 (Bankr. W.D. Mo. 2020)). And they state that Ms. Fama-Chiarizia was not engaged in commercial or business activities on the Petition Date, and in order to be eligible for Subchapter V under the plain terms of Section 1182, a debtor must be "actively participating in the exchange or buying and selling of economic goods or services for profit on the Petition Date." Reply at 5 (citing *In re Johnson*, 2021 WL 825156, at *7-8 (Bankr. N.D. Tex. Mar. 1, 2021)).

The Filosas also point to Ms. Fama-Chiarizia's statement that "'IUC's business relationship with the Filosas terminated about 2016. Thereafter, [she] no longer worked at IUC but remained as a twenty-five percent (25%) shareholder and remained liable on the Filosas' debt as a co-maker.'" Reply at 6 (quoting Declaration of Christina Fama-Chiarizia in Support of Debtors' Reply, ¶ 8, ECF No. 56-1). As a consequence, they argue, "[e]ven if IUC were operational, [Ms. Fama-Chiarizia and Mr. Fama, Jr.], at best, qualify as passive owners who owe residual business debt to the Filosas from [their] involvement several years ago with IUC." Reply at 6. The Filosas argue, "neither [Ms. Fama-Chiarizia and Mr. Fama, Jr.]'s residual business debt, nor their residual, passive ownership interest in IUC, nor their present employment are sufficient, either independently or collectively, to satisfy the 'engaged in commercial or business activities' requirement in Bankruptcy Code section 1182." Reply at 6-7.

And the Filosas reply that Ms. Fama-Chiarizia's reliance on *In re Wright* for the "engaged in commercial or business activities" requirement is misplaced, because that court relied on a passage in a noted bankruptcy treatise, *Collier on Bankruptcy*, to conclude that "the definition of a 'small business debtor' was not restricted to a person who was engaged in commercial or business activities at the time of the bankruptcy filing," but that language was later deleted.  Reply at 7.  They conclude that the purpose of Subchapter V is to help small businesses remain in business, not to assist those that are no longer in business.  Reply at 9.

*Ms. Fama-Chiarizia's Sur-Reply*

On July 22, 2022, Ms. Fama-Chiarizia filed a Sur-Reply and a Certification in reply to the Filosas' Response in Further Support of Their Amended Objection to Each Debtor's Designation as a Subchapter V Debtor (the "Supp. Opp."), ECF Nos. 108, 109.  She responds that she is eligible for Subchapter V status because she is currently engaging in rental activity, "dealing with restructuring legacy debt" from the Triboro Judgment, and actively pursuing counterclaims as a shareholder in IUC against Nicole and Anthony Frisina.  Supp. Opp. at 2.

Ms. Fama-Chiarizia observes that the Filosas' only objection to her Subchapter V status is that she does not meet the requirement to be "engaged in commercial or business activities." Supp. Opp. at 2.  She argues that the Filosas "rely on a non-binding circuit court's decision" to conclude that she is not "engaged in commercial or business activities."  *Id*.  And she argues that she is "engaged in commercial or business activity" because, as the court found in *In re Vertical Mac Construction,* "'engaged in commercial or business activities' does not necessarily mean buying and selling of economic good or services for profit."  Supp. Opp. at 3 (quoting *In re Vertical Mac Constr.,* 2021 WL 3668037, at *3).

Ms. Fama-Chiarizia also responds that the Filosas err when they fail to view the Triboro Judgment as the nexus for her qualifying commercial or business activities.  Supp. Opp. at 4 (citing Reply at 6-7).  She states that, as set forth in *In re Ikalowych*, they are "presently doing something" by pursuing a multi-million dollar counterclaim against Nicole and Anthony Frisina for, among other things, taking excessive distributions from IUC (the "Frisina Action").  And she argues that a recovery in that action can be used to fund a distribution to her creditors.  Supp. Opp. at 4 (citing *In re Ikalowych*, 629 B.R at 282).  She argues that she qualifies as a Subchapter V debtor because she is "(1) currently addressing legacy debt, and (2) actively pursuing a large damage counterclaim as owners of IUC which will fund a further distribution to creditors." Supp. Opp. at 5.

Ms. Fama-Chiarizia also responds that since 2019, she has rented a studio apartment that is a separate portion of her two-family home, and this, too, qualifies as being engaged in commercial or business activity.  Supp. Opp. at 6-7.  She states that she "provided the rental income information to her accountant and was under the impression that her tax returns had the rental income reflected."  Supp. Opp. at 6.  When she discovered that it was not reflected there or in her monthly operating reports, she "instantly amend[ed] her monthly operating reports to reflect the income received from her tenant."  Supp. Opp. at 6.  And on August 12, 2022, Ms. Fama-Chiarizia's accountant filed amended tax returns on her behalf for 2019 and 2020 reflecting her rental income.  *See* Supplemental Certification of Christina Fama-Chiarizia, ECF No. 124, at ¶¶ 3-4.

Ms. Fama-Chiarizia also observes that the Filosas rely on *In re Blue* to "'look first to the plain language of the statute to define those terms,'" but do not disclose that in that case, the court disagreed that the debtor's scheduled debts must be related to current business activity.  *Id*.

There, she notes, the court determined that "'Debtor's rental of the real property falls within the broad scope of commercial or business activities contemplated by subchapter V.'" Supp. Opp. at 7 (quoting *In re Blue*, 630 B.R. at 191).

> As the *In re Blue* court found:
>
> "Debtor intends to use subchapter V to address both defunct and non-defunct commercial and business activities, and the more straightforward interpretation of § 1182(1)(A) does not require a connection of debts to current business activities. Nothing in the statute requires that there be a nexus between the qualifying debts and the Debtor's current business or commercial activities. Moreover, such an interpretation could, for example, disqualify meritorious small businesses from the remedial purposes of subchapter V simply by having significant debts from former operations."

Supp. Opp. at 6 (quoting *In re Blue*, 630 B.R. at 191).

Here too, as in *In re Blue*, Ms. Fama-Chiarizia argues, she derives rental income from renting the apartment in her home and thus qualifies as "engaged in commercial or business activities." Supp. Opp. at 7. And she notes, "even the IRS considers rental property (even a single piece) as engaging in a business activity." *Id.*

*The Filosas' Sur-Response in Further Support of the Objection to Ms. Fama-Chiarizia's Subchapter V Designation*

On August 5, 2022, the Filosas filed a Sur-Response in Further Support of Their Amended Objection to Each Debtor's Designation as a Subchapter V Debtor (the "Supp. Obj."), ECF No. 113. The Filosas reply that despite her additional arguments, Ms. Fama-Chiarizia still does not meet the eligibility requirement to be "engaged in commercial or business activities" under Bankruptcy Code Section 1182. Supp. Obj. at 1.

The Filosas reply that the Triboro Judgment arises from "previous" business activity. *Id.* They argue that Ms. Fama-Chiarizia's receipt of rental income does not mean that she engages in "commercial or business activities" because if that were sufficient, "any debtor would take

advantage of the expedited provisions of Subchapter V simply by renting a room for a few months before filing a bankruptcy petition."  Supp. Obj. at 1-2.  The Filosas also reply that Ms. Fama-Chiarizia has not shown sufficient evidence of the rental income by producing a lease or reporting the rental income on her tax returns.  Supp. Obj. at 2.  And they state that "legacy business debt does not satisfy the temporal component that a debtor be 'engaged in commercial or business activities' in order to qualify for Subchapter V."  *Id.*

The Filosas instead argue that a debtor must be "presently" engaged in commercial or business activities on the petition date to satisfy Bankruptcy Code Section 1182.  Supp. Obj. at 2 (citing *Nat'l Loan Invs., L.P. v. Rickerson* (*In re Rickerson*), 636 B.R. 416, 424-25 (Bankr. W.D. Pa. 2021)).  They state that, while Ms. Fama-Chiarizia retains a residual ownership in IUC, she "walked away" from the business in 2016.  Supp. Obj. at 3.  And the Filosas reply that several courts have "rejected the reasoning of *Wright*, *Bonert*, and *Blanchard* and have held, instead, that the existence of residual business debt alone is not sufficient to qualify a debtor for Subchapter V."  Supp. Obj. at 3 (citing *In re RS Air, LLC*, 638 B.R. 403, 410 (9th Cir. B.A.P. 2022); *In re Ikalowych,* 629 B.R. at 282; *In re Thurmon,* 625 B.R. at 423).

The Filosas also reply that the Frisina Action does not amount to being engaged in commercial or business activities because it "has nothing to do with 'the exchange or buying and selling of economic goods or services for profit'; to the contrary, it is merely litigation pursuant to which the two families who owned the business are trying to recover assets from the other."  Supp. Obj. at 5 (citing *In re Johnson*, 2021 WL 825156, at *6).  They argue that, unlike the debtors in *In re Offer Space*, where the court found that the debtor was engaged in commercial or business activity despite the business' lack of current operations, Ms. Fama-Chiarizia lacks "active bank accounts, [and] accounts receivable," and is not engaged in "analyzing and

exploring counterclaims in a pending lawsuit against a third party, managing remaining assets," or "winding down its business."  Supp. Obj. at 5 (citing *In re Offer Space,* 629 B.R. at 306).

And the Filosas point to the legislative history of the Small Business Reorganization Act, and argue that it shows that the purpose of Subchapter V is to permit a small business to reorganize with the aim to "'remain in business,'" rather than to address legacy debt.  Supp. Obj. at 6-7 (quoting H.R. Rep. No. 116-171, at 1, 116th Cong. 1st Sess. (2019), reprinted in 2019 U.S.C.C.A.N. 366, 366, 2019 WL 3401849 (July 23, 2019) (comments of Rep. Ben Cline)). They state that "Congress intended Subchapter V to create a pathway for small business debtors to reorganize quickly and remain in business as a going concern and continue their operations. That purpose is not served by giving the same protections to debtors with residual business debt whose sole purported 'commercial or business activity' is pursuing wind-up litigation."  Supp. Obj. at 7.

And the Filosas reply that Ms. Fama-Chiarizia's receipt of rental income does not qualify as "commercial or business activity."  *Id*.  They contrast her situation to that of the debtor in *In re Blue*, and state that "the entire parcel of real property that the *Blue* debtor rented to tenants over a 16 year period is absolutely nothing like the small, 400 square foot studio in Debtor Chiarizia's private family home that she purportedly rents to Mr. Rizzi."  Supp. Obj. at 8.  And the Filosas note that Ms. Fama-Chiarizia "failed to produce, among other things, any evidence (i) of a lease agreement with either of her purported tenants, (ii) that Mr. Fox ever paid any monies to Debtor Chiarizia, (iii) that the monies Mr. Rizzi paid to her were for rent, or (iv) of the 'rental information' that she purportedly provided to her accountant."  Supp. Obj. at 9.

For all of these reasons, the Filosas conclude that Ms. Fama-Chiarizia is ineligible to proceed under Subchapter V.

15

## **The Applicable Legal Standards**

In August 2019, the Small Business Reorganization Act was signed into law, creating a new subchapter – Subchapter V – of the Bankruptcy Code.  Subchapter V creates a new pathway for small businesses to reorganize under Chapter 11, with a streamlined process, a Subchapter V trustee appointed in every case from the outset, no United States Trustees fees, and somewhat different roles for the debtor and creditors in proposing and confirming a plan of reorganization.  As one court has noted, Subchapter V creates an alternative "process to reorganize outside of the more costly traditional Chapter 11."  *In re Vertical Mac Constr.,* 2021 WL 3668037, at *1.

The election to proceed with Subchapter V is a debtor's option.  In order to be eligible to proceed under this Subchapter, courts agree that:

(1)     the Debtor must be a "person";
(2)     the Debtor's aggregate debt as of the Petition Date must not exceed $7,500,000;
(3)     the Debtor must be "engaged in commercial or business activities"; and
(4)     50% or more of the Debtor's debt must have arisen from "the commercial or business activities of the [D]ebtor."

*In re Ikalowych*, 629 B.R at 275 (citing 11 U.S.C. § 1182(1)(A)).

And finally, if the debtor's election to proceed under Subchapter V is challenged, the debtor bears the burden to show that it is, in fact, eligible to proceed in that way.  As one court recently observed, "'the vast majority of courts addressing the issue have found that the debtor bears the burden of proof to establish eligibility to proceed under subchapter V.'"  *In re Hillman*, 2023 WL 3804195, at *3 (Bankr. N.D.N.Y. June 2, 2023) (quoting *In re Phenomenon Mktg. & Ent., LLC*, 2022 WL 1262001, at *1 (Bankr. C.D. Cal. Apr. 28, 2022), *modified*, 2022 WL 3042141 (Bankr. C.D. Cal. Aug. 1, 2022)).

This is consistent with the rule that courts apply in connection with eligibility to proceed under other chapters.  *See, e.g.*, *In re Voelker*, 123 B.R. 749, 750 (Bankr. E.D. Mich. 1990)

(observing in the context of Chapter 12 that "[w]hen a debtor's eligibility to file under a particular chapter of the Bankruptcy Code is challenged, the burden is upon the debtor to establish such eligibility.").

## Discussion

Bankruptcy Code Section 1182(1)(A) establishes four requirements that a debtor must meet in order to be eligible to proceed under Subchapter V of Chapter 11.  These are first, that the debtor is a "person;" second, that the debtor's aggregate debt as of the petition date does not exceed $7.5 million; third, that the debtor must be "engaged in commercial or business activities;" and finally, that fifty percent or more of the debtor's debt arose from "the commercial or business activities of the debtor."  *In re Ikalowych*, 629 B.R at 275 (citing 11 U.S.C. § 1182(1)(A)).  And as noted, the debtor bears the burden to establish each of these elements.  *In re Hillman*, 2023 WL 3804195, at *3.

The Court considers each of these requirements in turn.

### *Whether Ms. Fama-Chiarizia Is a "Person"*

The first eligibility requirement that Ms. Fama-Chiarizia must satisfy to proceed under Subchapter V is that she is a "person."  11 U.S.C. § 1182(1)(A).  Bankruptcy Code Section 101(41) states that "[t]he term 'person' includes individual, partnership, and corporation."  11 U.S.C. § 101(41).

Here, the record shows, and the parties do not dispute, that Ms. Fama-Chiarizia, an individual, is a "person" within the meaning of Section 1182(1)(A).  April 12, 2023 Hearing Transcript, ECF No. 198 (the "April 12, 2023 Tr."), at 83:15-17.  Accordingly, the Court finds that Ms. Fama-Chiarizia satisfies the first eligibility requirement to be a Subchapter V debtor, that she is a "person."

*Whether Ms. Fama-Chiarizia's Aggregate Debt, as of the Petition Date, Does Not Exceed $7.5 Million*

The second eligibility requirement that Ms. Fama-Chiarizia must satisfy to proceed under Subchapter V is that her aggregate debt, as of the Petition Date, does not exceed $7.5 million.  11 U.S.C. § 1182(1)(A).

Here, the record shows that Ms. Fama-Chiarizia's amended schedules and statements state that she owes $3,939,383.88 in aggregate debt.  Amended Summary of Your Assets and Liabilities and Certain Statistical Information, ECF No. 48.  And in her amended Schedule E/F, she lists a debt owed to the Filosas and Triboro Hardware of $3,353,219.18.  Amended Schedule E/F.  That is, Ms. Fama-Chiarizia's schedules state that her aggregate debt comes within Subchapter V's $7.5 million limit.  And the record also shows that the parties do not dispute that this eligibility requirement is met.  April 12, 2023 Tr. at 83:17-18.  Accordingly, the Court finds that Ms. Fama-Chiarizia satisfies the second eligibility requirement to be a Subchapter V debtor, that her aggregate debt is less than $7.5 million.

*Whether Ms. Fama-Chiarizia Is "Engaged in Commercial or Business Activities"*

The third eligibility requirement that Ms. Fama-Chiarizia must satisfy to proceed under Subchapter V is that she is "engaged in commercial or business activities."  11 U.S.C. § 1182(1)(A).

The Filosas object to Ms. Fama-Chiarizia's Subchapter V election on grounds, in substance, that she is not "engaged in commercial or business activities," as required by Section 1182(1)(A).  They point out that IUC is no longer active, and that Ms. Fama-Chiarizia has had "no involvement with IUC since approximately 2016."  Obj. at 6.

Ms. Fama-Chiarizia responds that at the time that she commenced this bankruptcy case and elected to proceed under Subchapter V, she was engaged in commercial or business

18

activities.  She points to the fact that this bankruptcy case, and that of her brother Mr. Fama, Jr.,

"were filed . . . as a result of the judgment entered in favor of the Filosas which arose from a

business transaction."  Opp. at 3.  She also argues that she is presently "pursuing a large damage

counterclaim" arising from the former business activities of IUC, and that this may "fund a

further distribution to creditors."  Supp. Opp. at 5.  That is, in substance, she seeks to reorganize

under Subchapter V in order to address legacy business debt that she owes in connection with the

former activities of IUC, and to recover assets of that business, for the benefit of her creditors.

And separately, Ms. Fama-Chiarizia notes that since 2019, she has rented a separate

portion of her residence, a two-family home, and has reported this income in her amended

monthly operating reports.  Supp. Opp. at 5-6.  This rental activity, too, she argues, amounts to

"commercial or business activities."  Supp. Opp. at 6-7.

The starting point for the interpretation of any statute is the "'language of the statute

itself.'"  *In re Ikalowych*, 629 B.R. at 276 (quoting *Ransom v. FIA Card Servs., N.A.,* 562 U.S.

61, 69 (2011)).  As one bankruptcy court noted, "it is assumed that Congress expresses its intent

through the ordinary meaning of the language used."  *In re Rickerson*, 636 B.R. at 422.  And as

this Court has observed, "that does not mean that a court must read the words with blinders on.

Rather, as the Supreme Court has observed, it is a 'fundamental canon of statutory construction

that the words of a statute must be read in their context and with a view to their place in the

overall statutory scheme.'"  *In re Homaidan*, 596 B.R. 86, 101 (Bankr. E.D.N.Y. 2019), *aff'd sub*

*nom. Homaidan v. Sallie Mae, Inc.*, 3 F.4th 595 (2d Cir. 2021) (quoting *Davis v. Michigan Dep't*

*of Treasury,* 489 U.S. 803, 809 (1989)).

And the statute's terms should not be viewed in a vacuum.  Rather, as courts have

observed, it is appropriate to view the "'plain language in the context of the overall Code.'"  *In*

*re Offer Space,* 629 B.R. at 305 (quoting *In re Morreale*, 959 F.3d 1002, 1007 (10th Cir. 2020)).

A court's "'primary task in construing statutes is to determine congressional intent, using

traditional tools of statutory interpretation.'" *In re Offer Space,* 629 B.R. at 305 (quoting *In re*

*Taylor*, 737 F.3d 670, 678 (10th Cir. 2013)).  So, in addressing whether Ms. Fama-Chiarizia is

"engaged in commercial or business activities," it is necessary to consider what it means to be

"engaged in," and what amounts to "commercial or business activities."

 <u>The meaning of "engaged in."</u>  Courts have looked to various sources to give meaning to

the simple phrase "engaged in," as it is used in Section 1182 to set the parameters for Subchapter

V eligibility.  Simply put, the question with which courts grapple is, does the debtor need to be

"engaged in" commercial or business activities as of the petition date, or is it sufficient that the

debtor may have been "engaged in" such activities at some point in the past?

 In *In re Ikalowych*, the bankruptcy court undertook an exhaustive analysis of multiple

sources in considering this question.  As the court noted, "the phrase 'engaged in' is a past

participle used as an adjective to describe the present state of the noun 'person.'" *In re*

*Ikalowych*, 629 B.R. at 282.  It also looked to the Supreme Court's holding that "'past participles

like "owed" are routinely used as adjectives to describe the present state of a thing.'" *In re*

*Ikalowych*, 629 B.R. at 280 (quoting *Henson v. Santander Consumer USA Inc.,* 137 S. Ct. 1718,

1722-23 (2017)).  This pointed to the conclusion that "the Court must look at the then-present

state of things as of the Petition Date." *In re Ikalowych*, 629 B.R. at 280.

 Courts also look to the use of the term "engaged in" in other sections of the Bankruptcy

Code, including "to establish the eligibility (or lack of eligibility) of various persons and entities

to file for certain types of bankruptcy protection." *Id*.  In *In re Ikalowych*, the court considered

examples including railroads, foreign insurance companies, family farmers, family fishermen,

and others, and observed that, for example, Section 101(18)(a) defines a "family farmer," in relevant part, as an "individual or individual and spouse engaged in a farming operation," and Section 101(19A)(A) defines a "family fisherman" as "an individual or individual and spouse engaged in a commercial fishing operation." *In re Ikalowych*, 629 B.R. at 281. The court concluded that "the 'engaged in' phrase is used throughout the Bankruptcy Code, and it always means the same thing:  that a person or entity is presently doing something." *Id*.

Plain meaning has a role to play as well.  As another court found, in applying "the ordinary meaning of 'engaged' to the language of [Bankruptcy Code Section 1182], a person 'engaged in' commercial or business activities is a person occupied with or busy in commercial or business activities – not a person who at some point in the past had such involvement." *In re Johnson*, 2021 WL 825156, at *6.   That is, "'engaged in' inquiry is inherently contemporary in focus." *Id*.  And "'where . . . the words of the statute are unambiguous, the judicial inquiry is complete." *In re Offer Space,* 629 B.R. at 305 (quoting *In re Taylor*, 737 F.3d at 678).

Other courts are in accord.  As one bankruptcy court in this Circuit recently observed, "the majority of bankruptcy courts reviewing subchapter V eligibility have found 'engaged in' as having a temporal restraint and require the eligibility analysis to review the debtor's activity as of the petition date." *In re Hillman*, 2023 WL 3804195 at *3 (citing cases).  The court concluded that the "majority view [is] well-founded, and therefore, . . . the Debtor must demonstrate she was presently engaged in commercial or business activities as of the Petition Date." *Id*.  As another bankruptcy court observed, "in order to be eligible to proceed under Subchapter V a debtor must be presently engaged in commercial or business activities." *In re Rickerson*, 636 B.R. at 424.

This Court agrees with the thoroughly analyzed and well-reasoned decisions of bankruptcy courts within and outside this Circuit that have found that a debtor's eligibility to reorganize under Subchapter V turns on whether the debtor is "engaged in" commercial or business activities as of the date that the debtor seeks to invoke the protections and opportunities of Subchapter V – here, the Petition Date.  Put another way, the Court finds that the relevant date to consider is not some date in the past, but the date that the debtor seeks to pursue a restructuring under Subchapter V – again, here, the Petition Date.

But this answers only part of the question posed by the third requirement that Ms. Fama-Chiarizia must satisfy to be eligible for Subchapter V – that she is "engaged in commercial or business activities."  The Court next considers what amounts to "commercial or business activities" for purposes of Subchapter V.

The meaning of "commercial or business activities."  The Bankruptcy Code does not define "commercial or business activities," nor has the Second Circuit addressed its scope in the context of Subchapter V eligibility.  Therefore, the starting point for addressing its meaning is the plain text of Section 1182.

At the outset, it is worth considering what is *not* in the text of Section 1182.  This Section refers to "commercial or business activities," but it does *not* refer to "operation."  The term "operation" does appear in other Bankruptcy Code definitions, including Section 101(18)(A), which states that "[t]he term 'family farmer' means . . . [an] individual or individual and a spouse engaged in a farming *operation* whose aggregate debts do not exceed $11,097,350."  11 U.S.C. § 101(18)(A) (emphasis added).  It also appears in Section 101(19)(A), in the definition of "family fisherman," which states that "[t]he term 'family fisherman' means . . . an individual or individual and spouse engaged in a commercial fishing *operation*."  11 U.S.C. § 101(19)(A)

(emphasis added).  The eligibility requirements for a Subchapter V debtor contain similar "engaged in" language – but these requirements reference "activities," not "operation."

That is, in the context of eligibility for specialized forms of relief, the Bankruptcy Code refers to "operation" for other specialized categories of debtors, including family farmers and family fishermen – but not for debtors seeking to reorganize under Subchapter V.  Instead, Congress' use of the more encompassing word "activities" is consistent with the notion that it "inten[ded] to provide wide availability for debtors to elect to file under [S]ubchapter V."  *In re Hillman*, 2023 WL 3804195, at *4.

More generally, many courts have interpreted Section 1182's "engaged in commercial or business activities" requirement as a "broad, encompassing phrase."  *Id.*  And as several courts have concluded, the kinds of activities that are associated with a business that is no longer operating – but is still pursuing and defending claims and otherwise engaged in winding up its activities – can amount to "business or commercial activities" for purposes of Subchapter V eligibility.

In *In re Wright*, one of the first reported decisions to address Subchapter V eligibility, the debtor filed a Subchapter V bankruptcy case on February 28, 2020, just nine days after the effective date of the SBRA.  *In re Wright*, 2020 WL 2193240, at *1.  The bankruptcy court considered whether the debtor, the former sole member of one business and co-owner of another, was eligible to be a Subchapter V debtor even though these businesses had ceased operations some two years earlier.

The court observed that "[t]he context here is a Bankruptcy Code providing relief from debt in various forms including reorganization of a business, sale of assets, valuation of property,

the adjustment of debt, and combinations of those and other remedies." *In re Wright*, 2020 WL 2193240, at *3.

It overruled the United States Trustee's objection to the debtor's eligibility, and held:

> Although the brief legislative history of the SBRA indicates that it was intended to improve the ability of small businesses to reorganize and ultimately remain in business, nothing therein, or in the language of the definition of a small business debtor, limits application to debtors *currently* engaged in business or commercial activities.

*Id*. The court concluded that "[the debtor] is 'engaged in commercial or business activities' by addressing residual business debt." *Id*.

In *In re Bonert*, the bankruptcy court similarly considered an issue that arose soon after the SBRA became effective. There, the court considered "whether the Debtors should be permitted to amend their Chapter 11 petition to elect treatment under the newly-enacted Subchapter V of Chapter 11." *In re Bonert*, 619 B.R. at 251. As the court explained, the debtors initially did not elect to proceed under Subchapter V because "[a]s of the Petition Date, the Debtors were not operating a business, and therefore did not believe that the 'small business' designation applied." *In re Bonert*, 619 B.R. at 255.

Citing the bankruptcy court's decision in *In re Wright*, the court observed that the debtors sought re-designation in good faith, and concluded that "[t]he re-designation is appropriate since the majority of the Debtors' liabilities are business debts stemming from their prior operation of Bonert's Inc., a bakery" and that "they were not motivated by gamesmanship, but rather by the Debtors' understanding of the facts and the law as they existed at the time of each designation." *In re Bonert*, 619 B.R. at 256.

In *In re Blanchard*, another early decision interpreting the SBRA and Subchapter V eligibility, the bankruptcy court considered the eligibility of codebtors to convert their Chapter

11 bankruptcy case to one under Subchapter V, which "'offers small business debtors, including individuals, a streamlined process and tailored tools for confirming a plan.'" *In re Blanchard*, 2020 WL 4032411, at *1 (quoting *In re Trepetin*, 2020 WL 3833015, at *1 (Bankr. D. Md. July 7, 2020)).  The debtors' "business debts stem from personal guarantees of [business] debt, and from mortgages on their rental properties." *In re Blanchard*, 2020 WL 4032411, at *2.

Adopting the reasoning in *In re Wright*, the court found that "'nothing [in the SBRA], *or in the language of the definition of a small business debtor*, limits application to debtors currently engaged in business or commercial activities.'" *In re Blanchard*, 2020 WL 4032411, at *2 (quoting *In re Wright*, 2020 WL 2193240, at *3) (emphasis in original).  It concluded that since "a majority of the Debtors' debts stem from operation of both currently operating businesses and non-operating businesses," the debtors were eligible to proceed under Subchapter V.  *In re Blanchard*, 2020 WL 4032411, at *2.

In *In re Offer Space,* the bankruptcy court considered whether a debtor that had formerly provided "vendor marketing solutions to direct marketers," but had ceased those operations and was no longer an operational business when it filed for bankruptcy, was eligible for Subchapter V relief.  *In re Offer Space,* 629 B.R. at 302.

The court undertook a comprehensive analysis of the arguments and caselaw in deciding whether to strike the debtor's election to proceed in Subchapter V.  It first concluded that "to be eligible for Subchapter V, a debtor must be presently 'engaged in commercial or business activities'" on the petition date, and not on some date in the past.  *In re Offer Space,* 629 B.R. at 306.  The court next considered what this required – that is, what kinds of activities must a debtor be "engaged in" as of the petition date in order to meet Section 1182(1)(A)'s test.

The court adopted "a 'totality of the circumstances' approach" to assess whether the debtor was engaged in "business or commercial activities" as of the petition date. *Id*. It reviewed the dictionary definition of "operation," and observed that "the terms 'activities' and 'operations' are not interchangeable." *Id*. It also noted that the debtor's activities as of the petition date included:

> (1) having active bank accounts; (2) having accounts receivable; (3) analyzing and exploring counterclaims in a lawsuit . . . ; (4) managing the Stock [received in exchange for a sale of its principal assets]; and (5) winding down its business and taking reasonable steps to pay its creditors and realize value for its assets.

*Id*.

The court concluded that "[w]hile the Debtor's business was no longer in operation as it had been previously, the Court believes that, when considering the totality of the circumstances, [these] activities adequately demonstrate that it was 'engaged in commercial or business activities' on the Petition Date." *In re Offer Space,* 629 B.R. at 306-07.

At the same time, the court recognized an outer boundary to this rule. It rejected the debtor's argument that merely "by filing this bankruptcy case and engaging in all that a bankruptcy filing entails, . . . [the debtor] was 'engaged in commercial or business activities.'" *In re Offer Space,* 629 B.R. at 307. And it pointed out that "such a result would permit debtors to manufacture Subchapter V eligibility by the very act of filing a petition itself." *Id*. *See* 8 Collier on Bankruptcy ¶ 1182.02, at n.5 (16th ed. 2023) (stating that in *In re Offer Space,* the court "carefully reviews the case law and concludes that being 'engaged in business activities' is not the same as being engaged in business operations,'" and holds that "a debtor could still be engaged in business activities even after its business operations had terminated" since a "closed business with . . . receivables to be collected and affairs to be resolved would be engaged in commercial or business activities."). *See In re Rickerson*, 636 B.R. at 426 (rejecting the debtor's

argument that "an individual who has a job as an employee for someone else would be understood as thereby engaging in a commercial or business activity").

In *In re Blue*, the court similarly endorsed a broad and pragmatic approach to the question of the kinds of activities that a debtor must be currently engaged in to be eligible to proceed in a Subchapter V case.  In that case, the debtor's path to Subchapter V included serving as the sole owner and president of a firm that provided information transport consulting services.  *In re Blue*, 630 B.R. at 183.  But when she filed her bankruptcy case, that business had "ceased operations . . . and [had] no assets," and the debtor had "no intention of reinstating" that business.  *Id*.  In addition, and when the bankruptcy case was filed, the debtor worked full-time at a law firm doing similar work, and also provided consulting services for two other entities as an independent contractor.

And separately, the debtor owned both her residence and a former residence that she rented out for several years prior to filing her Subchapter V case, until it became necessary to evict a tenant for non-payment of rent.  That tenant also damaged the property, and "in an attempt to return the property to rentable condition, [she] incurred debt."  *In re Blue*, 630 B.R. at 184.

Citing *In re Offer Space,* as "particularly cogent," the *In re Blue* court concluded that the debtor was "currently engaged in commercial or business activities as contemplated by § 1182(1)(A)," for several reasons.  *In re Blue*, 630 B.R. at 190.  As a starting point, the court found that the debtor's consulting work as an independent contractor "constitutes such activities . . . [because it] is clearly the delivery of services in exchange for a profit."  *Id*.  The court also found that it was not necessary for the debtor's debts to be connected to her current "commercial or business activities," and found that "the more straightforward interpretation of § 1182(1)(A)

does not require a connection of debts to current business activities.  Nothing in the statute requires that there be a nexus between the qualifying debts and the Debtor's current business or commercial activities."  *In re Blue*, 630 B.R. at 191.  And the court observed that "such an interpretation could . . . disqualify meritorious small businesses from the remedial purposes of subchapter V simply by having significant debts from former operations."  *Id*.

The bankruptcy court undertook a similar analysis in *In re Port Arthur Steam Energy*. There, the court reviewed dictionary definitions of "commercial," "commerce," "business," and "activity," and agreed with the bankruptcy court in *In re Offer Space,* that "business operations" are not the same as "commercial or business activities" and not necessary for a debtor to be eligible for Subchapter V.  *In re Port Arthur Steam Energy,* 629 B.R. at 238.  The court observed:

> [S]imilar to this case, the court in [*In re Offer Space*] rejected efforts to conflate business operations with commercial or business activities.  The court noted that Congress did not elect to use the term "operations" in Section 1182(1)(A).  And . . . "activities" and "operations" are not interchangeable.

*Id*.

The bankruptcy court concluded, in finding that the debtor was eligible to proceed in Subchapter V, that "[o]n the petition date, [the debtor] was not conducting its historical business operations.  But it was engaged in commercial and business activities."  *In re Port Arthur Steam Energy,* 629 B.R. at 234.  These activities included "litigating a multi-million-dollar lawsuit," "pursuing collection remedies," and filing "reports and tax returns."  *In re Port Arthur Steam Energy,* 629 B.R. at 237.

Similarly, in *In re Vertical Mac Construction,* the debtor, a contractor that specialized in stucco installations for residential homes, ceased operations of its contracting business due to a series of construction defect claims against it and others for improper stucco installation, and

filed for bankruptcy some six months later, as a Subchapter V debtor, in April 2021. *In re Vertical Mac Constr.*, 2021 WL 3668037, at *1.

The United States Trustee objected to Vertical Mac's election to proceed under Subchapter V on grounds that "it no longer operated a business on the Petition Date." *In re Vertical Mac Constr.,* 2021 WL 3668037, at *2. In particular, the United States Trustee argued that it "ceased operations in October 2020, had not actively collected account receivables or pursued any lawsuits against third parties, had no intent to resume operations and had planned to sell substantially all its assets." *Id.*

Vertical Mac responded that Subchapter V requires only that a debtor "be engaged in commercial or business 'activities' and not operations." *Id.* While it acknowledged that it no longer was engaged in stucco installation services, it cited activities including that "it still maintains a bank account, has accounts receivable, works with insurance adjusters and insurance defense counsel to resolve the Construction Claims, and has been preparing for the sale of its assets." *Id.*

The court first looked to dictionary definitions of "engaged," "commercial," commerce," "business," and "activity." *In re Vertical Mac Constr.,* 2021 WL 3668037, at *3. It recognized that "[o]n the Petition Date, the Debtor's business was not operating." *Id.* But it found that the definitions of the relevant terms, viewed in the context of decisions of several other bankruptcy courts, pointed to the conclusion that:

> Taken together, the phrase [commercial or business activities] is a broad one intending to encompass any act of a business of a commercial nature. Indeed, other courts have concluded the plain meaning of engaged in "commercial or business activities" is broad with a very inclusive range of commercial or business activity.

*In re Vertical Mac Constr.,* 2021 WL 3668037, at *3 (citing cases).

The court then observed that "[t]he terms 'activities' and 'operations' are not interchangeable. . . . 'Operations' insinuates a fully functioning business, but 'activities' encompasses acts that are business or commercial in nature but fall short of an actual operating business." *In re Vertical Mac Constr.,* 2021 WL 3668037, at *3 (citing cases). It concluded that Vertical Mac's "activities" of maintaining bank accounts, working to resolve litigation, and preparing for the sale of its assets were "commercial or business activities as required under §1182 on the Petition Date." *In re Vertical Mac Constr.,* 2021 WL 3668037, at *4.

To the same effect, in *In re RS Air,* the Ninth Circuit Bankruptcy Appellate Panel found that "the term 'engaged in' is inherently contemporary in focus and not retrospective. Thus, a debtor need not be maintaining its core or historical operations on the petition date, but it must be 'presently' engaged in some type of commercial or business activities to satisfy § 1182(1)(A)." *In re RS Air,* 638 B.R. at 410.

There, the court considered a challenge to the Subchapter V election of RS Air, LLC, a debtor that was no longer actively engaged in its business operations which formerly had included "providing flight services . . . and flying fragile technology prototypes to prevent damage from baggage handling on commercial flights" and "acquiring and selling fractional interests in aircraft." *In re RS Air,* 638 B.R. at 406. At the time it filed for bankruptcy, the debtor had ceased doing business with its primary business partner and major creditor, NetJets, and instead, asserted that it was "engaged in business activities by (1) litigating with NetJets, (2) negotiating with NetJets to sell its fractional jet interests back to NetJets," and remaining current and in good standing on its state and federal reporting and tax obligations. *In re RS Air,* 638 B.R. at 406-07.

The court next considered "the . . . question [of] when a debtor is no longer operational, what types of 'activities' satisfy the requirement that the debtor be engaged in commercial or business activities." *In re RS Air,* 638 B.R. at 410. It found that "courts generally have held that the scope of commercial or business activities is very broad and apply a 'totality of the circumstances' standard." *In re RS Air,* 638 B.R. at 410 (citing cases). In particular, the court noted that many courts found the standard to be met where the debtor was engaged in winding-down activities, considering and pursuing claims, and similar non-operational activities. *Id.* The court concluded that the activities advanced by RS Air, LLC – including litigating with its primary creditor and business partner NetJets, and remaining in good standing on its state and federal reporting and tax obligations – were sufficient to meet Subchapter V's "commercial or business activities" requirement. *In re RS Air,* 638 B.R. at 410-11.

In *In re Hillman,* the bankruptcy court similarly considered a challenge to the Subchapter V eligibility of the debtor, a natural person. There, the debtor and her largest creditor, ULM I Holding Corp. ("ULM"), had been engaged in litigation arising from an alleged breach of contract and a guaranty in state court, and that litigation formed a significant component of the debtor's "business or commercial activities." *In re Hillman,* 2023 WL 3804195, at *1.

At the outset, the court agreed with *In re Offer Space, In re RS Air,* and other courts that have "adopt[ed] a 'totality of the circumstances' approach" to determining whether a debtor is engaged in commercial or business activities. *In re Hillman,* 2023 WL 3804195, at *4 (citing cases). The court also agreed that Section 1182's "broad, encompassing phrase 'commercial or business activities' . . . reflect[ed] Congress' intent to provide wide availability for debtors to elect to file under subchapter V." *Id.* And the court observed that "a debtor can qualify for a

subchapter V absent the company's traditional business operations where the company is winding down." *Id.*

The court also observed that eligibility for Subchapter V "speaks only to whether the debtor was engaged in commercial or business activities – 'not whether the [d]ebtor was making a profit, actively operating, or intending to operate in the future.'" *In re Hillman*, 2023 WL 3804195, at *4 (quoting *In re Ikalowych*, 629 B.R. at 285);

> Applying those standards, the court concluded:
>
> Here, there is no question that the State Court Action was pending as of the Petition Date and involves commercial litigation between ULM as plaintiff and CHC and the Debtor as codefendants. The Court finds the Debtor's defense of the State Court Action which involves a defaulted commercial lease agreement by CHC and the Debtor's personal guaranty of same is sufficient winding down activity for the Debtor to satisfy the "engaged in commercial or business activities" requirement of § 1182(1)(A).

*In re Hillman*, 2023 WL 3804195, at *4.

This Court finds that several guideposts for the interpretation of "engaged in commercial or business activities" may be drawn from Section 1182(1)(A) and the cases that have interpreted and applied it, within and outside this Circuit.

First, this Court agrees that it is appropriate to interpret Section 1182's "engaged in commercial or business activities" requirement as a "broad, encompassing phrase . . . reflecting Congress' intent to provide wide availability for debtors to elect to file under subchapter V." *In re Hillman*, 2023 WL 3804195, at *4. It should be construed inclusively, "to encompass any act of a business of a commercial nature." *In re Vertical Mac Constr.*, 2021 WL 3668037, at *3 (citing cases).

Second, this Court agrees that "a 'totality of the circumstances' approach" is warranted to assess whether the debtor was engaged in "business or commercial activities" as of the petition

date.  *In re Offer Space,* 629 B.R. at 306.  This means that in determining whether a debtor is "engaged in business or commercial activities" as of the petition date, the court may look to the facts and circumstances of the debtor's particular situation, including what led to the debtor's bankruptcy filing, the activities in which the debtor is engaged as of the petition date, and how the debtor plans to proceed in the bankruptcy case to marshal its assets and address its debts.

Third, this Court agrees that, as part of this assessment, it is important to recognize that a business need not be continuing its usual or prior business operations in order for it to be "engaged or commercial activities."  That is, "the terms 'activities' and 'operations' are not interchangeable."  *Id.*  And "'[o]perations' insinuates a fully functioning business, but 'activities' encompasses acts that are business or commercial in nature but fall short of an actual operating business."  *In re Vertical Mac Constr.,* 2021 WL 3668037, at *3 (citing cases).  Simply put, ongoing "business operations" are not required to open the door to Subchapter V.

What amounts to "activities" sufficient to meet Section 1182(1)(A)'s test depends on the facts and circumstances of the debtor's situation.  In one of the first cases to be decided under the SBRA, the court recognized that a debtor may be considered to be "'engaged in commercial or business activities' by addressing residual business debt," even where the business is no longer operating.  *In re Wright*, 2020 WL 2193240, at *3.  In another situation, the court found that activities including having bank accounts and accounts receivable, pursuing litigation counterclaims, and winding down the business and "taking reasonable steps to pay its creditors and realize value for its assets" were sufficient.  *In re Offer Space,* 629 B.R. at 306.

In other circumstances, the court pointed to activities including the debtor's litigation with its primary creditor and business partner, and maintaining its good standing on its state and federal reporting and tax obligations.  *In re RS Air,* 638 B.R. at 411 (citing cases).  *See, e.g., In re*

*Hillman*, 2023 WL 3804195, at *4 (stating that "[t]he Court finds the Debtor's defense of the State Court Action which involves a defaulted commercial lease agreement by CHC and the Debtor's personal guaranty of same" satisfies Section 1182(1)(A)'s "engaged in commercial or business activities" requirement).

And this Court agrees that plainly, the mere act of filing for bankruptcy protection and electing to proceed under Subchapter V, standing alone, is not enough. As the court in *In re Offer Space* observed, "such a result would permit debtors to manufacture Subchapter V eligibility by the very act of filing a petition itself." *In re Offer Space,* 629 B.R. at 307. Nor would "[having] a job as an employee for someone else" be adequate, without more, to meet this test. *In re Rickerson*, 636 B.R. at 426.

More generally, both within and outside of Subchapter V, individuals and businesses follow many paths to addressing their financial circumstances. To be sure, these paths include the restructuring of an operating business, so that it may "reorganize and ultimately remain in business." *In re Wright*, 2020 WL 2193240, at *3. They also include combinations, mergers, and sales of all or a portion of an operating business. And these paths may also include winding-up, liquidation, pursuing claims and assets of the enterprise through litigation, and addressing legacy and residual debt related to the enterprise, among other paths, all to bring about the pursuit and recovery of assets for the benefit of creditors. It would be odd indeed if Subchapter V – which was adopted to facilitate greater access to all of the tools of Chapter 11 for smaller enterprises – somehow was available for some, but not others, of these paths to addressing debt and meeting the needs of creditors.

So, as of the Petition Date, was Ms. Fama-Chiarizia "engaged in commercial or business activities?" Here, the record shows that Ms. Fama-Chiarizia owns a twenty five percent interest

in IUC, and that she has had no involvement with any business operations of IUC since approximately 2016.  It also shows that together with IUC, she and her brother, Mr. Fama, Jr. were co-makers of the August 2014 Note, and that the August 2014 Note was business debt, not personal debt.

And the record also shows that in December 2020, the New Jersey Superior Court found Ms. Fama-Chiarizia and Mr. Fama, Jr. to be jointly and severally liable, together with IUC, for the debt arising from the August 2014 Note, and entered judgment in favor of the Filosas in the amount of $3,353,219.18 – that is, the Triboro Judgment.  And the Triboro Judgment is the principal debt that Ms. Fama-Chiarizia seeks to address in her Chapter 11 bankruptcy case.

The record further shows that Ms. Fama-Chiarizia is pursuing at least one asset that is related to IUC's business activities.  Specifically, in the Frisina Action, she is pursuing a multi-million dollar counterclaim against former business associates Nicole and Anthony Frisina for, among other things, taking excessive distributions from IUC.  This action remains pending in the New Jersey Superior Court, Essex County, Law Division.

And separately, the record shows that as of the Petition Date, and since April 2019, Ms. Fama-Chiarizia was engaged in a separate activity, in the form of renting a separate portion of her residence, a two-family home.  Ms. Fama-Chiarizia does not argue, and the record does not indicate, that this activity is somehow connected to her prior activities with IUC, or to the debt that she seeks to address or the assets related to IUC that she seeks to marshal in this bankruptcy case.  At the same time, courts agree that "'[t]he rental of real estate is a trade or business if the taxpayer-lessor engages in regular and continuous activity in relation to the property . . . even if the taxpayer rents only a single p[i]ece of real estate.'"  *In re Blue*, 630 B.R. at 195 (quoting

*Alvary v. U.S.*, 302 F.2d 790, 796-97 (2d Cir. 1962)) (interpreting the Internal Revenue Code, 26 U.S.C. §§ 1, *et seq.*)

Viewing Section 1182(1)(A)'s "engaged in commercial or business activities" requirement as a "broad, encompassing phrase," and in light of the totality of the circumstances presented by the record, the Court is satisfied that this requirement is met, for several reasons.

At the outset, this Court agrees with the substantial majority of courts that have found that a debtor may be eligible to reorganize under Subchapter V when it seeks to address residual business debt, and to marshal residual business assets.  And here, the facts and circumstances here show that Ms. Fama-Chiarizia seeks to do exactly that with respect to the residual business debt and assets of IUC.

Like the debtor in *In re Wright*, even though IUC is no longer operating, Ms. Fama-Chiarizia is "addressing residual business debt."  *In re Wright*, 2020 WL 2193240, at *3.  And as with the debtors in *In re Blanchard*, the debt at issue arises from, in substance, "personal guarantees of [business] debt" arising from, among other enterprises, "non-operating businesses."  *In re Blanchard*, 2020 WL 4032411, at *2.  As in *In re Offer Space,* the business that is the source of the debt at issue – here, IUC – "was no longer in operation as it had been previously" as of the Petition Date.  *In re Offer Space,* 629 B.R. at 306-07.

Similar to *In re Port Arthur Steam Energy,* as of the Petition Date, IUC "was not conducting its historical business operations.  But it was engaged in commercial and business activities."  *In re Port Arthur Steam Energy,* 629 B.R. at 234.  *See In re Vertical Mac Constr.,* 2021 WL 3668037, at *2 (finding that the debtor was eligible for Subchapter V even though it "ceased operations . . . [and] had no intent to resume operations and . . . planned to sell substantially all its assets"); *In re RS Air,* 638 B.R. at 410 (finding that "a debtor need not be

maintaining its core or historical operations on the petition date"); *In re Hillman*, 2023 WL 3804195, at *4 (observing that "a debtor can qualify for a subchapter V absent the company's traditional business operations where the company is winding down.")

And, for better or worse, courts agree that where – as here – the "business and commercial activities" are, in large part, in the nature of evaluating, asserting, pursuing, and defending litigation claims, this can still amount to addressing the business' debts and marshaling its assets, and can satisfy Section 1182(1)(A)'s requirement of "commercial or business activities."

As in *In re Offer Space,* Ms. Fama-Chiarizia is engaged in pursuing "counterclaims in a lawsuit . . . and taking reasonable steps to pay [her] creditors' and realize value for [her] assets." *In re Offer Space,* 629 B.R. at 306.  And similar to the debtor in *In re Port Arthur Steam Energy,* Ms. Fama-Chiarizia is "litigating a multi-million-dollar lawsuit" that arises from IUC's former business operations.  *In re Port Arthur Steam Energy,* 629 B.R. at 237.

Like the debtor in *In re Vertical Mac Construction,* she is seeking to resolve litigation claims related to IUC's business, including the Triboro Judgment and the claims in the Frisina Action.  *In re Vertical Mac Constr.,* 2021 WL 3668037, at *2.  And as in *In re RS Air,* Ms. Fama-Chiarizia is "litigating with" former key business creditors and partners, and perhaps "negotiating" with them as well.  *In re RS Air,* 638 B.R. at 406-07.  Similarly, like the situation in *In re Hillman*, Ms. Fama-Chiarizia is engaged in litigation with her largest creditor, the debt is a legacy obligation from the former business operations of a business entity in which she owned a substantial interest, and the business is no longer operating.  *In re Hillman*, 2023 WL 3804195, at *1.

And separately, when this bankruptcy case was filed, Ms. Fama-Chiarizia was engaged in a separate business activity – renting a portion of her residence, a two-family home.  To be sure, if a debtor somehow sought to manufacture eligibility under Subchapter V by entering into a lease for a portion of their residence on the eve of filing for bankruptcy to a family member, a measure of skepticism could well be appropriate.  But here, the record shows that Ms. Fama-Chiarizia has been engaged in this activity since 2019, or considerably before this bankruptcy case was filed.  So, while there could well be facts and circumstances where the rental of a portion of a debtor's residence would not be sufficient to meet the requirement of "commercial or business activities," that is not the situation here.

And while there is no connection between this activity and the debt that Ms. Fama-Chiarizia seeks to address, this Court agrees with those courts that have found that such a "nexus" is not required.  *See In re Blue*, 630 B.R. at 191 (stating that "[n]othing in the statute requires that there be a nexus between the qualifying debts and the Debtor's current business or commercial activities.").

It is worth noting that the record here does not show, or even suggest, that Ms. Fama-Chiarizia somehow "manufacture[d]" her eligibility to be a Subchapter V debtor by filing this bankruptcy case.  Nor does the record show, or even suggest, that this bankruptcy case is "motivated by gamesmanship."  *In re Bonert*, 619 B.R. at 256.  Instead, this bankruptcy case, and Ms. Fama-Chiarizia's eligibility to be a Subchapter V debtor, result from the facts and circumstances that led to the filing, including IUC's financial difficulties, the Triboro Judgment, and the Frisina Action.

To be sure, it is plain from the record that for the last several years, the principal activities among IUC, Ms. Fama-Chiarizia and Mr. Fama, Jr., the Frisinas as their former

business partners, and the Filosas as their creditors, have been more in the nature of contentious litigation than IUC's construction and contracting business.  But it is also plain that the purpose of this Subchapter V case is to address residual business debt, and to marshal residual business assets.

*      *      *

In sum, here, the record shows that, viewed from the perspective of the totality of the circumstances, and based on the facts and circumstances of her particular situation, Ms. Fama-Chiarizia was engaged in activities including addressing the residual business debt of IUC, in the form of the August 2014 Note, of which she was a co-maker, and the Triboro Judgment.  She was also engaged in marshaling the business assets of IUC, including in the Frisina Action against the Frisinas as former business partners.  The fact that IUC is no longer engaged in its former business operations, and that these activities are principally in the form of litigation, does not alter these conclusions.  As a debtor, she is "taking reasonable steps to pay [her] creditors and realize value for [these] assets," and that is sufficient.  *In re Offer Space,* 629 B.R. at 306. And separately, she was engaged in the business of renting a separate portion of her residence, a two-family home.  While that activity does not have a nexus to the debt that she seeks to address, such a nexus is not required.

Accordingly, the Court finds that Ms. Fama-Chiarizia satisfies the third eligibility requirement to be a Subchapter V debtor, that she is "engaged in business or commercial activities."

*Whether Fifty Percent or More of Ms. Fama-Chiarizia's Debt Arose from Her Commercial or Business Activities*

39

The fourth eligibility requirement that Ms. Fama-Chiarizia must satisfy to proceed under Subchapter V is that at least fifty percent of her debt "arose from [her] commercial or business activities." 11 U.S.C. § 1182(1)(A).

Here, the record shows that Ms. Fama-Chiarizia's amended schedules state that she owes $3,353,219.18 in noncontingent, liquidated debt to the Filosas, arising from the Triboro Judgment. *See* Opp. at 5-6. And the record shows that all of that debt is related to the business of IUC. Her amended schedules also state that her total debt is $3,939,383.88. *See id.* That is, it is plain from the record that substantially more than fifty percent of Ms. Fama-Chiarizia's debt arose from the legacy business debt of IUC, as reflected in the Triboro Judgment, and therefore from her "commercial or business activities." And the parties do not dispute that this eligibility requirement is met. *See* April 12, 2023 Tr. at 83:17-18, 84:12-19. Accordingly, the Court finds that Ms. Fama-Chiarizia satisfies the fourth eligibility requirement to be a Subchapter V debtor, that fifty percent or more of her aggregate debt arose from her commercial or business activities.

## Conclusion

For the reasons stated herein, and based on the entire record, the Court concludes that Ms. Fama-Chiarizia has met her burden to show that she meets each of the eligibility requirements of Bankruptcy Code Section 1182(1)(A) to be a Subchapter V debtor. She has shown that she is a person engaged in commercial or business activities, that she has aggregate debts that do not exceed $7.5 million, and that at least fifty percent of these debts arose from her commercial or business activities.

Accordingly, the Objection of the Filosas to Ms. Fama-Chiarizia's designation of her bankruptcy case as one under Subchapter V is overruled. An order in accordance with this memorandum decision will be entered simultaneously herewith.

Dated: Brooklyn, New York
September 15, 2023



Elizabeth S. Stong
United States Bankruptcy Judge